UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

RANDALL THOMAS, an individual,   Plaintiff,

Case: 2:12-cv-15494
Judge: Roberts, Victoria A.
MJ: Hluchaniuk, Michael J.
Filed: 12-14-2012 At 04:04 PM
CMP RANDALL THOMAS V LIGHTHOUSE OF OAKLAND, ET AL (LG)

vs.

LIGHTHOUSE OF OAKLAND, a Michigan Non- Profit Corporation in the state of Michigan,

GREG STERNS, Individually and in his official capacity as a LIGHTHOUSE OF OAKLAND Supervisor,

JONH ZIRALDO, Individually and in his official capacity as the LIGHTHOUSE OF OAKLAND CEO,

JUDITH ROBINSON, Individually and in her official capacity as a LIGHTHOUSE OF OAKLAND Supervisor,

LATICE BOOKER, Individually and in her official capacity as a LIGHTHOUSE OF OAKLAND Supervisor,

**COMPLAINT AND JURY DEMAND**

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint pending in this court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge, nor do I know of any other civil action, not between these parties arising out of the same transaction or occurrence as alleged in this complaint that is either pending or was previously filed and dismissed, transferred, or otherwise disposed of after having been assigned to a judge.

NOW COMES the Plaintiff, Randall Thomas, and his complaint against the Defendant, Lighthouse of Oakland, state unto this Honorable Court as follows

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964 (as amended by the Equal Employment Opportunity Act of 1972) for employment discrimination. Jurisdiction is specifically conferred on this Court under 42 U.S.C. 2000e-5. Equitable and other relief are also sought under 42 U.S.C. 20003-5(G).

2. This action is brought pursuant to the Americans With Disabilities Act of 1990, 42 U.S.C. 12101, et. seq.

3. This action is brought pursuant to the Elliott-Larsen Civil Rights Act of 1964, as amended

4. This action is brought pursuant to the Michigan Persons with Disabilities Act No. 220 Public Acts of 1976, as amended

3. Defendant's address is 300 Riverfront Dr Unit 13-D, Detroit, 48226

4. The address where the alleged discrimination occurred 46156 Woodward Ave
Pontiac, MI 48341

5. The alleged discriminatory acts occurred from   August 2008 to September 2010.

6. Charges were filed with the Michigan Civil Rights Commission regarding defendants alleged discriminatory conduct on May 17, 2010.

7. Charges were filed with the Equal Employment Opportunity Commission regarding defendants discriminatory conduct on  May 17, 2010, see exhibit 1.

8. The Final Determination/Notice of Right to Sue letter from the Equal Employment Opportunity Commission was received on September 14, 2012.

9.  The acts complained about in this suit violate federal laws regarding Race,Gender, Disability, Retaliation, Failure to Promote Me, Failure to Train Me, Verbal Intimidation, Hostile Work Environment, Reasonable Accommodation, Failure to follow FMLA guidelines, Violation of EEOC laws, and Termination of Employment.

GENERAL ALLEGATIONS

1.  Plaintiff is a resident of the City of Detroit, County of Wayne, State of Michigan.

2. Defendant's address is 300 Riverfront Dr Unit 13-D, Detroit,  48226

3.  Defendant is a non-profit doing business in Oakland County, state of Michigan.

4.  Plaintiff is an African American male; this fact was known to Defendant at all times relevant to this litigation.

5. During the employment application process, Plaintiff disclosed to Defendant that he was eligible for services provided by Michigan Rehabilitation Services a division of the Department of Labor and Economic Growth.

6. During the entirety of Plaintiff's employment Defendant never gave Reasonable Accommodation for Plaintiff's disability.

7. During the Plaintiff's employment he received numerous disciplinary actions both verbal and written due to Plaintiff's disability.

8. During Plaintiff's time of employment Plaintiff was openly ridiculed and made fun of by management regarding Plaintiff's disability.

9. During Plaintiff's time of employment Defendant used Plaintiff's disability as a means of preventing Plaintiff from job advancement to management.

10. Plaintiff Randall Thomas was hired by defendant in or around June 2008 and discharged in or around September 2010.

11. During the term of his employment with Defendant, Plaintiff received honorary awards for various outreach programs, see exhibit 2.

12. During the term of Plaintiff's employment with Defendant, Plaintiff received the following benefits:

    a. Life Insurance;

    b. Health and Dental Insurance;

    c. Participation in the Retirement Plan;

d. Participation in the Savings Plan;

e. Participation in the education reimbursement plan;

f. Overtime;

g. Daycare.

h. Bonuses

13. At the time of Plaintiff's discharges Defendant had a workforce of approximately 30 employees.

14. At the time of Plaintiff's discharge Defendant had never advanced or employed an African American male in Plaintiff's department.

15. Plaintiff was on track to become management level employee at Defendant's facility.

16. At the time of Plaintiff's discharge Defendant's CEO was also acting as Human Resources Manager which disabled the Plaintiff's ability to have due process during FMLA leave, Training, Human Resource Investigation, Short Term and Long term Disability, Child Care, Return to work date and Policies and Procedures.

17. Defendant, at all relevant times, maintained an employment manual entitled, "Policies and Procedures," which was distributed to all employees.

18. Said Policies are procedures set forth limitation upon Defendant's right to discharge its employees as provided guideline for discipline and corrective action.

19. During the Plaintiff's employment Plaintiff was due a Performance evaluation relevant to Plaintiff's job performance.

20. Said contractual Policies and Procedures set forth limitation upon Defendant's right to discharge its employees and provided guidelines for discipline and corrective action.

COUNT I

RACE DISCRIMINATION IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

21. Plaintiff repeat and re-allege and the allegations contained in paragraph 1 through 20 of this Complaint and incorporates them by reference as if fully restated herein.

22. Defendant is an employer within the meaning of the Elliott-Larsen Civil Rights Act.

23. The Elliott-Larsen Civil Rights Act prohibited Defendant as an employer from failing or refusing to hire, recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensations, or a term, conditions, or privilege of pre-employment, because of race.

24. Defendant violated Elliott-Larsen by maintaining and subjecting the Plaintiff to a de facto policy of not promoting the Plaintiff to a management position, while giving him management duties.

25. Defendant violated the rights of the Plaintiff by limiting his job opportunities, by allowing a segregated work place, and subjecting the plaintiff to different methods and standards of discipline because his race.

a. Defendant subjected Plaintiff to a hostile and abusive work environment by allowing white supervisory personnel to repetitively call him a slave, and physically enact the motion of cracking a whip openly in the workplace while other employees observed and laughed.

b. Defendant allowed white supervisory personnel to openly verbally intimidate Plaintiff using racial slurs "I'm your slave master, get back to work!"

c. Defendant allowed white supervision to continue using racial slurs when speaking to Plaintiff after Plaintiff made numerous complaints to CEO regarding racial slurs and verbal intimidation. Defendant's white supervisory personnel often greeted the Plaintiff by saying "say good morning to your slave master".

26. White employee were routinely treated less harshly than black employees.

27. White employees were often given emergency benefits from company grants intended for client use, such as paying past due utility services: light bills, gas bills, water bills, past due taxes,. White employees were given cash advances from future earnings while African American employees were not.

28. During Plaintiff's time of employment Defendant only employed its white personnel in Emergency Services, a division intended to aid an assist clients in need of emergency cash assistance.

29. Problems and mishaps by female and white employees were commonly overlooked by Defendant's management while problems and mishaps by African American male employees were emphasized by the same management team.

30. Female and white employees were allowed to take company paid training while Plaintiff was often forced to take vacation time or unpaid leave to receive any required or advancement training.

31. Plaintiff was unfairly requested by Defendant's white supervisor Greg Stern to relinquish his seat to a white female employee for Lawyer Advocacy training.

32. Defendant white supervisor allowed female employees Michelle Murphy and Latice Booker to attend college courses during company time while receiving full-time pay. Plaintiff's workload was therefore increased a hundredfold due the absence of aforementioned female employees.

33. Defendant did not allow the Plaintiff to attend college advancement courses during company time as previously advised that he would be by management, while female and white employees were allowed to do so.


COUNT II


34. Plaintiff was denied reasonable accommodations under Title VII of Civil Rights Act of 1964 and the Americans With Disabilities Act of 1990.

35. Plaintiff was subjected to disciplinary actions for failure to perform typing responsibilities fast enough or being spontaneous enough when asked to perform typing duties, Defendant neglected to provide reasonable accommodation for Plaintiff.

36. Plaintiff was often publicly humiliated in front of other employees by Defendant's supervision by saying to Plaintiff in meetings that he was not worth the money he was being paid due to his handicap and that he should only be allowed phone duties since he couldn't read or write.

37.The Elliott-Larson Civil Rights Act prohibits Defendant as an employer from failing or refusing to hire, recruit, discharge, or ; discriminate against an individual with respect to employment, compensation, or a term, condition or privilege of employment, because of race.

38. The Elliot-Larson Civil Rights Act prohibits Defendant as an employer from limiting, segregating, and classifying employees in a way which deprives an employee of an employment opportunity or otherwise adversely affects the status of an employee because of race.

39. Defendant violated Elliott-Larsen by maintaining and subjecting Plaintiff to a de facto policy of not promoting African American males to management positions during Plaintiff's time of employment.

40. Defendant violated the rights of Plaintiff by limiting the Plaintiff's job opportunities, allowing a segregated workplace and subjecting the Plaintiff to different methods and standards of discipline because of race.

41. Defendant discharged and otherwise discriminated against Plaintiff with respect to their terms, conditions, and privileges of employment with Defendant because of their race.

42. Defendant's white supervisory personnel Greg Stern confided in Plaintiff that he had prayed for guidance on how to handle African Americans and Hispanics specifically before accepting employment with the Defendant.

43. Defendant through its hourly, supervisory and management employees subjected Plaintiff to a hostile and abusive work environment which included the repeated use of racial epithets, racial prejudice, and discrimination on the basis of race.

44. Because of-its pervasiveness Defendant's management either knew or should have known of the hostile and abusive atmosphere to which Plaintiff was subjected.

45. Defendant's Policies and Procedures set fourth specific "modes of behavior" which could result in immediate termination; of these modes of behavior white employees guilty of said behavior were not disciplined whereas African American employees with less serious "modes of behavior" were treated more harshly.

46. Plaintiff Thomas was denied medical leave under FMLA guidelines and repeatedly harassed and threatened with termination by Defendant's CEO.

47. Plaintiff was repeatedly passed over for promotions and systematically excluded from management promotions.

48. Despite their knowledge of said practices, Defendants management has not sought to eliminate said policies and practices through appropriate selection, training and supervision of management personnel.

49. As a direct and proximate cause of said acts and omission, Plaintiff has suffered economic injuries including but not limited to loss of earning capacity, loss of benefits, loss of educational opportunities and has also suffered emotional pain and suffering.

50. WHEREFORE, Plaintiff seeks all damages allowable against Defendant in an amount exceeding Ten Thousands ($10,000.00) Dollars, exclusive of costs, interest, and attorney fees. Plaintiff also demands such other relief as their Court deems just, proper, and equitable.

**COUNT III**

**WRONGFUL DISCHARGE IN BREACH OF CONTRACT**

51. Plaintiff repeats and re alleges the allegations contained in paragraphs 1 through 50 of his Complaint and incorporates them by reference as through fully stated herein.

52. Defendant at all relevant times maintained a "Employee Performance Review Process" which was presented as a management tool for employee advancement.

53. Defendant neglected to give Plaintiff any Performance Reviews as way to prevent Plaintiff's advancement.

54. Said process was and is included in Defendant, Lighthouse of Oakland's Personnel Policies and Procedures.

55. Said Process requires the following:

A. Clear identification of area needing improvement and impact of current behavior.

B. Clear identification of what acceptable improvement looks like.

C. Clear identification of who will serve as resources to aid/facilitate improvement.

D. Established time frames and methods for audit.

56. The foregoing policies and procedures were received by and relied upon by Plaintiff.

57. Defendant was obligated and contractually bound by said policies and procedures which created a contract of employment under Michigan law.

58. Defendant maintained at all relevant times a FMLA Policy with the stated purpose of protecting, inter alia, Defendant's employees.

59. Plaintiff received and relied on Defendant's FMLA policy which represents Defendant's long term disability, permanent disability, per defendant's policies and procedures.

60. Said process sets forth rules for termination and create a contract for employment which can be termination for cause only.

61. The processes outlined by Defendant's policies and procedures were not followed with regard to Plaintiff and therefore Defendant has breached its contract of employment with Plaintiff.

62. Other policies and procedures including Defendant's "Options Available to Manage Employees who Demonstrate Inappropriate Modes of Behavior Specified in "Respect for Others" Personnel Policies and Procedures" specifically limit the Defendant's right to terminate its employees.

63. Defendant violated these policies and procedures by terminating Plaintiff without good, just sufficient cause.

64. Defendant did not follow the policies and procedures outline before and during the termination of Plaintiff.

65. As a direct result of said acts and omissions of Defendant, Plaintiff has suffered and continues to suffer loss of wages, health and dental benefits, other work related benefits and other economic benefits.

66. Defendant applied the terms of its Performance Reviews process and Corrective Action Process in an uneven and discriminatory fashion; white and female employees were given clear notice in writing of areas of management dissatisfaction whereas the Plaintiff was given a written disciplinary action and often disciplined verbally under differing standards.

67. Defendant in its termination of Plaintiff against Defendant in an amount exceeding Ten Thousand ($10,000.00) Dollars, exclusive of costs, interest, and attorney fees. Plaintiff also demands such other relief as this court deems just, proper, and equitable.

68. Defendant's CEO used company paid doctors to coerce Plaintiff to return to work early while under FMLA leave Short term Disability. Defendant's doctors advised Defendant that Plaintiff was suitable to return to work while Plaintiff's then current Psychiatrist and Neurologist Leon Rubenfaer M.D. placed the Plaintiff on prescription medication (s) and put Plaintiff on totally disabled medical leave, Defendant's CEO also used their coerce company paid doctor to bypass Plaintiff's Psychological provider Benny Whitefield's recommendations that Plaintiff be off of work and that plaintiff was totally disable.

**COUNT IV**

**RETALIATION IN VIOLATION OF ARTICLE 7 ELLIOTT-LARSON**

**CIVIL RIGHTS ACT**

69. Plaintiff Thomas repeats and re-alleges the allegations contained in paragraphs 1 through 68 of the Complaint and incorporates them by reference as though fully stated herein.

57. On or about May, 2010, Plaintiff Thomas filed a EEOC/ civil rights complaint with the Michigan Department of Civil Rights and the EEOC against Defendant alleging that he was denied promotions and training because of his race in violation of the Elliot-Larsen Civil Rights Act.

58. On or about JUNE 20, 2010, Plaintiff received a of the above referenced complaint from Defendant.

59. Defendant engaged in an effort to sabotage Plaintiff's work during the period of time following the filing of his initial complaint with the Department of Civil Rights/ EEOC

60. Defendant actively set Plaintiff up to fail as an employee by conspiring with Plaintiff 's supervisor and/or other employees to garner evidence for Plaintiff's termination.

61. Plaintiff was terminated as a direct result of this conspiracy in violation of the Whistleblower's Protection Act.

62. Any reasons offered by Defendant for Plaintiff's termination are a pretext for its retaliatory action.

63. Plaintiff filed an action with the Michigan Department of Civil Right/ EEOC protesting the retaliatory discharge within two (2) days from plaintiff's date he returned to work SEPT 13, 2010, after which plaintiff was discharged on 9/13/2010 and was sent a letter of discharge dated 9/15/10 of the adverse action.

64. Plaintiff gave Defendant a return to work date of 9/13/10 well in the advance of plaintiffs return on 9/13/10.

    A) Plaintiff was told to keep his supervisor (GREG STERNS) updated on what date plaintiff could return early to defendant, ALTHOUGH plaintiff had informed Defendant of plaintiff return date of 9/13/10, defendant also sent Greg Sterns on vacation during the time defendant told plaintiff to call supervisor Greg Sterns on his early return date.

    B) Defendant stopped plaintiff from taking his child to defendants child care center upon plaintiffs return on 9/13/10, plaintiff was told by Defendants child care center director on 9/13/10 plaintiffs return date that plaintiffs kid couldn't return until plaintiff talked to defendant.

WHEREFORE, Plaintiff seeks all damages allowable against Defendant in an amount exceeding Ten Thousand ($10,000.00) Dollars, exclusive of costs, interest, and attorney fees. Plaintiff also demands such other relief as this Court deems just, proper, and equitable.

**COUNT V**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

65. Plaintiff incorporates the above referenced paragraphs.

66. Plaintiff is a qualified individual under the Americans With Disabilities Act of 1990.

67. Plaintiff was subject of retaliatory actions by Defendant CEO at Plaintiff's work place.

68. The retaliation occurred after Plaintiff failed to drop plaintiffs EEOC complaint against defendant.

69. Defendant CEO retaliated against Plaintiff by GETTING company paid doctors to lie about plaintiff health to shorten the time of plaintiff had off for FMLA.

i. Plaintiff was NEVER give a fair time off from defendant during plaintiff FMLA time off;

ii. Plaintiff WAS CALL EVERY week BY defendants CEO DURING plaintiffs FMLA time off and ask if plaintiff had quit working for defendant causing stress to Plaintiff;

iii. Plaintiff was not allowed to FMAL leave until plaintiff typed a letter of complaint to defendants CEO;

iv. Plaintiff was not allowed to GO TO ANY TRAINNING to get plaintiff ready to return to work, after being out from work on FMLA leave ;

v.

COUNT VI

VIOLATION OF ADA OF 1990, 42 USC

70. Shortly after Plaintiff reported the incident to Defendants CEO, Plaintiff began to be harassed by Defendant CEO AND SUPERVIORS.

71. After being unable to sleep for weeks following the WHIPPING AND RACE incident and the harassment by Defendants CEO and supervisors, Plaintiff was forced to go to her doctor on or around May of, 2010, and Plaintiff was diagnosed with anxiety disorder due to Plaintiff's workplace environment and was prescribed medication.

72. On or around 8/10, Plaintiff received a letter from a Clinical Psychologist asking for Plaintiff to be totally disable from working for defendant because his current department stating "high levels of stress due to interpersonal tension at work".

73. Plaintiff made his superiors aware of the letter that she had received from the Clinical Psychologist.

74. Instead of allowing Plaintiff get better during FMLA from a stressful environment, on or around 8/10, Defendant CEO CALLED Plaintiff directly TO RETURN to work ASAP.

75. Defendant CEO also disciplined Plaintiff by placing plaintiff's child on restrictions at defendant's child care center.

76. After Plaintiff was forced to talk to and met with defendants CEO AND supervisors during plaintiffs FMLA time off, Plaintiff's stress level rose and he was unable to sleep.

77. On or around 8/10, Plaintiff was seen by his physicians and given a letter stating that Plaintiff is under tremendous stress.

78. Plaintiff left her doctor and on or around May of, 2010, Plaintiff filed a complaint with the Defendants CEO AND ACTING Human Rights Department regarding Plaintiffs treatment in the workplace.

79. On or around May, 2010, Plaintiff filed a grievance regarding the incident involving Defendant Greg Sterns and Latice BOOKER in the work place with defendants CEO.

80. Over the next several days Plaintiff continued to work under the stressful environment however in the leter days to come plaintiff being harassed and discriminated on was too much for the Plaintiff to bear.

81. On or around 8/10, a reconciliation meeting was held by defendants CEO and its supervisors and Plaintiff and Defendant revealing that Defendant supervisor's behavior had "rose to the level of disability harassment and discrimination and the the company was going to get trained in sensitivity and diversity".

82. During this time, Plaintiff contacted the Equal Employment Opportunity Commission (EEOC) and filed a charge (EEOC Charge No.           ) alleging that Plaintiff had been discriminated against in violation of the American with Disabilities Act, in that Plaintiff was denied "a reasonable accommodation in retaliation for filing a complaint of workplace discrimination, and because of her disability".

83. On or around August 7, 2010, Plaintiff again visited ger primary doctor for depression related to his work environment and was prescribed additional medication and again referred to behavior health.

84. After Plaintiff's conditions did not improve, Plaintiff visited his Behavioral Health Physician on or around 9/10,


1. Discharge

The respondent's answer was provided by its attorney, . The respondent denies discharging the claimant because of his race and subjecting the claimant was terminated for his failure to provided a return to work date or return to work. The respondent stated it denies the claimant's allegation that he was told that he could return to work if he dropped his civil rights complaint

The respondent stated the claimant was hired on June 16, 2008, as a Senior Foreclosure Counselor, and in arch 2010, his job classification was changed to Senior Financial/Home-Ownership Counselor. (Exhibit R-1)

Beginning in May 2010, the respondent stated the claimant began requesting time-off from work, due to headaches, and the respondent approved the claimant to be of work for two weeks based on the respondent's short term disability plan. Also, during May 2010, the respondent stated the claimant filed

a Worker's Compensation claim, alleging that he was disabled from working due to work-related stress. (Exhibit R-1)

On May 17, 2010 the respondent stated the claimant flied a charge of discrimination with MDCR, contact number 413398. After which, the respondent stated the claimant indicated he would be off work until 9/ 2010.

On 8/, 2010, the respondent stated the claimant provided a doctor's note indicating he would be totally disabled until 9/13, 2010.

On June 17, 2010, Mr. Ziarldo provided a copy of the Memo to the claimant, in which Mr. Ziraldo stated he was responding to the claimant's concerns regarding the claimant's allegations against managers Greg Stern (White) and Latice Booker (Black).

The respondents CEO John Ziarldo further stated that Managers Greg Sterns and Latrice Booker were issued verbal reprimands. Mr. Ziraldo stated Greg Sterns was issued the reprimand because he made a comment, "slave master" when referring to himself when talking about how he worked. Mr. Ziraldo stated Ms. Booker was issued a verbal reprimand because she upset the claimant when she intervened when discussing the claimant's disability, which she should have referred to Mr. Ziraldo,himself. (Exhibit R-1)

The respondent stated the claimant also stated in the email that Mr. Ziraldo was demanding that the claimant return to work without investigating his complaints against his supervisor. The respondent stated Mr. Ziraldo indicated to the claimant that he was not demanding that the claimant that if he was not able to return to work at the end of his FMLA, he might be eligible for a non-FMLA leave this never happened. (Exhibits R1 & R-5)

On August 27, 2010, at the meeting held with the claimant, Mr. Ziraldo, Ms. Judith Robinson (Black) respondent's Director of Community Development, and the claimant's direct supervisor Greg Sterns, the respondent stated the claimant said he was willing and able to return to work. However, the respondent stated the claimant requested a couple additional days to arrange for child care and ask his doctor to change the return to work date, and Mr. Ziraldo granted the claimant's request

On September 13, 2010, the respondent stated the claimant showed up with his son to put son in company child care, and was terminated.

The defendant used a their Independent Examiner to do a report in the companies favor by the name of Dr.Ager, this doctor came with finds after 45mins of a meeting that the defendant was not disabled from performing his job duties as a housing counselor with the defendant,and that the plaintiff does not need restrictions in order to perform his job duties. this was done although the Doctor never reviewed the plaintiffs medication records nor did he's no the full extent of his medical history this doctor just was their to send the defendant back to work under duress. violation of FMLA and retaliation.

1. Discharge

The claimant disclosed he was diagnosed with dyslexia on his initial job application and provided documentation from Vocational Rehabilitation Services

The claimant stated that he requested an FMLA leave after being of work for several weeks. It took several months before John Ziraldo, CEO, who was acting as Human Resources Director would even respond to claimant's request. The claimant stated that he was awarded Worker's Compensation due to work related stress.

During the process of the FMLA request being approved, the claimant was repeatedly pressured to return to work despite having presented documentation from his physician detailing his inability to perform his job duties.

Once the FMLA was approved, John Ziraldo repeatedly threatened the claimant that he would be terminated for abandonment of his job.

When asked the reason he did not provide a date by August 31, 2010, the claimant stated his personal physician Dr Rubenfaer, had already provided his return to work date as September 13, 2010 to the respondent in a note from his Doctor dated July 28, 2010.

The claimant continued to maintain that he was informed by the Defendants executive director John Ziraldo that he could not return to work until he dropped his civil rights complaint.

The claimant was discharged by the respondent due to his race (American-American), disability, and retaliation for filing a previous MDCR CIVIL RIGHTS COMPLAINT #413398.

The investigation revealed that the claimant engaged in a protected activity. The Claim filed MDCR Contact #413398 on May 17,2010, alleging disability discrimination (Exhibit D-2). On August 24,2010, claimant sent respondent an e-mail requesting a meeting to discuss his civil rights concerns. (Exhibit R-1). On August 27, 2010, Claimant met with the Respondent and its managers to discuss Claimant's civil rights concerns. (Exhibit R-1) The investigation revealed that the claimant engaged in a protected activity.

The investigation revealed that Respondent's decision maker, John Ziraldo (White) was aware of claimant's civil activity. Respondent stated in its position statement that was aware of Claimant's Civil Rights Complaint MDCR#413398 that Claimant filed on May 17, 2010. (Exhibit D-3) Witness testimony and documentation supports that Mr. Ziraldo, Greg Sterns (White) and Judith Robinson (Black) met with Claimant on August 27, 2010,to discuss Claimant's Civil Rights concerns. (Exhibit R-1)

The investigation revealed that Claimant was discharged on September 13, 2010. . The investigation revealed that Claimant had been on aa medical leave of absence from may 7, 2010 to August 2, 2010. Claimant's physician extended Claimant's medical leave until September 13, 2010, which he could then return to work. (Exhibit R-1) The Respondent's medical leave policy stated that, September 13, 2010, which he could then return to work. (Exhibit R-1). ,

The investigation with the EEOC revealed that the claimant was in constant communication with Respondent from August 27, 2010 until he was discharged on September 13.

Count VII

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Respectfully submitted by,

RANDALL D. THOMAS,



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Detroit Field Office**

477 Michigan Avenue, Room 865
Detroit, MI  48226
Intake Information Group:  (800) 669-4000
Intake Information Group TTY:  (800) 669-6820
Detroit Status Line:  (866) 408-8075
Detroit Direct Dial:  (313) 226-7638
TTY (313) 226-7599
FAX (313) 226-2778

October 25, 2012

Randall Thomas
300 Riverfront Drive
Apt. 13D
Detroit, MI  48226

Re: EEOC Chg. No. 23A-2011-00419
MDCR Chg. No. 420446

Dear Mr. Thomas:

Enclosed is your Dismissal and Notice of Rights letter which was mailed to your address of record by this office on September 14, 2012. It was returned to sender because it was unable to be forwarded. Had you received the Notice in September, when it was first sent, your 90 day filing rights would have begun from that day of receipt. Although you did not receive it then, the respondent company (Lighthouse of Oakland County) probably did.

In accordance with this agency's procedures and regulations, a lawsuit must be filed in Federal District court within 90 days of the date of receipt of the Notice of Rights letter, by you, the charging party, or your right to sue will be lost.

Even though your Notice is being re-sent, since it was originally mailed in mid September, you have until mid December to file your lawsuit before your 90 days would expire.

I hope this information is helpful in pursuing your continued interests in this matter.

Sincerely,

Darlene Moore
State and Local Coordinator

EOC Form 161 (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Randall Thomas<br>201 Southfield Road<br>Unit C<br>Birmingham, MI 48009 | From: | Detroit Field Office<br>477 Michigan Avenue<br>Room 865<br>Detroit, MI 48226 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 23A-2011-00419 | Darlene A. Moore,<br>State & Local Coordinator | (313) 226-4602 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_[signature]_    9/14/2012

Enclosures(s)    Webster N. Smith,    (Date Mailed)
District Director

cc:

**LIGHTHOUSE OF OAKLAND COUNTY**
**46156 Woodward Avenue**
**P. O. Box 430508**
**Pontiac, MI 48342**

Enclosure with EEOC
Form 161 (11/09)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

County in which action arose: Oakland

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**: Randall Thomas

**DEFENDANTS**: Lighthouse of Oakland, et al

**(b)** County of Residence of First Listed Plaintiff: Wayne
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: Oakland
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

300 Riverfront Dr Apt 13D
Detroit MI 48226

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Case: 2:12-cv-15494
Judge: Roberts, Victoria A.
MJ: Hluchaniuk, Michael J.
Filed: 12-14-2012 At 04:04 PM
CMP RANDALL THOMAS V LIGHTHOUSE OF OAKLAND, ET AL (LG)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☒ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / PERSONAL PROPERTY | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☒ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☒ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment / Habeas Corpus: | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☒ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause: Title VII of Civil Rights, Disabilities Act 1990

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions):
JUDGE ___ DOCKET NUMBER ___

DATE: 12/14/12
SIGNATURE OF ATTORNEY OF RECORD: Randall Thomas

**FOR OFFICE USE ONLY**

RECEIPT # ___ AMOUNT ___ APPLYING IFP ___ JUDGE ___ MAG. JUDGE ___

PURSUANT TO LOCAL RULE 83.11

1. Is this a case that has been previously dismissed? ☐ Yes ☑ No (circled)

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____

2. Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.) ☐ Yes ☑ No (circled)

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____

Notes : _____