IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

RANDALL THOMAS

      Plaintiff,                             CASE NO.: 12-cv-15494

      v.                                  HON. VICTORIA ROBERTS
                                            DRAFT 4
LIGHTHOUSE OF OAKLAND,             Submitted: May 4, 2016
LIGHTHOUSE COMMUNITY
DEVELOPMENT, GREG STERNS,
and JOHN ZIRALDO

      Defendants.

_____/

## ORDER:

### 1. GRANTING IN PART AND DENYING IN PART LIGHTHOUSE OF OAKLAND'S AND LIGHTHOUSE COMMUNITY DEVELOPMENT'S JOINT MOTION FOR SUMMARY JUDGMENT (ECF NO. 99)

### 2. GRANTING GREG STERNS' AND JOHN ZIRALDO'S JOINT MOTION FOR SUMMARY JUDGMENT (ECF NO. 98)

## I.    INTRODUCTION

Randall Thomas sues Lighthouse of Oakland ("LOO") and Lighthouse Community Development ("LCD") for alleged violations of Title VII of the Civil Rights Act of 1964, Michigan's Elliott-Larsen Civil Rights Act ("Elliott-Larsen"), the Family Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), and the Michigan Persons with Disabilities Act ("PDCRA"). LOO is an umbrella non-profit organization that is comprised of multiple entities, one of which is LCD. Thomas was employed by LCD.

Thomas also sues John Ziraldo ("Ziraldo"), Lighthouse of Oakland CEO, individually for alleged violations of Elliott-Larsen, and Greg Sterns ("Sterns"), his supervisor at LCD, individually, for intentional inflection of emotional distress ("IIED").

Two motions are before the Court: (1) LOO's and LCD's joint motion for summary judgment on Thomas' Title VII, Elliott-Larsen, FMLA, ADA, and PDCRA claims; and (2) Ziraldo's and Sterns' joint motion for summary judgment on Thomas' claims against Ziraldo for alleged violations of Elliott-Larsen and against Sterns for IIED.

The Court **GRANTS:**

**(1)** LOO's and LCD's joint motion (ECF No. 99) on Thomas' Title VII, Elliott-Larsen, ADA, and PDCRA discrimination and retaliation claims;

**(2)** LOO's and LCD's joint motion on Thomas' FMLA interference and retaliation claims; and

**(3)** Ziraldo's and Sterns' joint motion (ECF No. 98).

The Court **DENIES:**

LOO's and LCD's joint motion on Thomas' Title VII and Elliott-Larsen racial harassment claims.

## II.   BACKGROUND

Thomas began his employment with LCD on June 16, 2008. *Pl.'s Resp. to Mot. Summ. J. 3, ECF No. 100.* Shortly thereafter, Thomas requested voice-to-text software. *Id.* After Thomas asked for the software, LCD asked Thomas for more information

2

regarding the accommodation. *Lighthouse Mot. Summ. J. 7, ECF No. 99.* Thomas did not respond to the request. *Dep. Tr. of Judith Wheeler-Williams 4-5, ECF No. 99-10.* Thomas also says that during this period he was denied a typing assistant. *Pl.'s Resp. to Mot. Summ. J. 4, ECF No. 100.*

On April 20, 2010, Sterns referred to himself as Thomas' "slave master" or "slave driver" and made a motion and sound like he was cracking a whip, instructing Thomas to "get back to work." *Pl.'s Second Am. Comp. 9, ECF No. 61.* Sterns does not dispute that he made such comments. *Dep. Tr. of Greg Sterns 10-11, ECF No. 98-9.* Sterns alleges that the comments and motions were related to the fact that he does not take lunch often; he says his behavior had nothing to do with Thomas' race. *Id.*

Thomas asked Ziraldo to investigate the incident. *Pl.'s Second Am. Comp. 9, ECF No. 61.* Thomas alleges that after Ziraldo failed to adequately reprimand Sterns, Sterns told Thomas that "he had prayed to God for guidance about working with Blacks." *Pl.'s Second Am. Comp. 10, ECF No. 61.* Sterns does not dispute that he made these comments. *Dep. Tr. of Greg Sterns 11, ECF No. 98-9.* Allegedly the next day Sterns came into Thomas' office and said, "Say good morning to your slave master." *Pl.'s Second Am. Comp. 10, ECF No. 61.* Sterns denies that he greeted Thomas in such a fashion. *Dep. Tr. of Greg Sterns 11, ECF No. 98-9.* Allegedly on that same day, and on many other occasions, Sterns and Ziraldo glared at Thomas for an unusually long time. *Pl.'s Second Am. Comp. 11, ECF No. 61.* Thomas says this made him feel threatened. *Id.* Sterns and Ziraldo dispute that they ever glared at Thomas. *Dep. Tr. of Greg Sterns 12, ECF No. 98-9.*

3

Around May 10, 2010, Thomas went on sick leave. He stated he was disabled due to stress, anxiety, depression and work-related loss of sleep. *P.'s Second Am. Comp. 12, ECF No. 61*; *Exh. A. Dep. Tr. of John Ziraldo 364, ECF No. 99-2*. That same day, Thomas filed racial and disability discrimination complaints with the Michigan Department of Civil Rights ("MDCR") and Equal Employment Opportunity Commission ("EEOC.") *Exh. M. EEOC and MDCR Complaints, ECF No. 99-17*. Thomas testified in a deposition that after filing his complaints, Ziraldo told him to "drop the EEOC Complaint and come back to work." *Exh. C. Dep. Tr. of P. 288, ECF No. 99-4.* Ziraldo denies the allegation and says he assured Thomas there would be no retaliation for the complaints. *Exh. A. Dep. Tr. of John Ziraldo 57-58, ECF No. 99-2*; *See also Exh. N. Mem. to Pl., ECF No. 99-18.*

In June 2010, Thomas' psychiatrist, Dr. Rubenfaer, provided written certification that Thomas was disabled until August 2, 2010 due to depression related conditions. *Pl.'s Second Am. Comp. 12, ECF No. 61.* Thomas completed and returned FMLA leave forms. *Exh. A. Dep. Tr. of John Ziraldo 394-396, ECF No. 99-2*. LCD stated that Thomas' time off would be classified as FMLA leave from May 7, 2010 until August 2, 2010. *Exh. L. Letter to Pl., ECF No. 99-16.*

On July 29, 2010 Thomas provided LCD with a note from Dr. Rubenfaer stating that Thomas "is totally disabled from work and can return to work on September 13, 2010. It is OK for him to go to training on August 15, 2010 with company OK." *Pl.'s Second Am. Comp. 13, ECF No. 61; Exh. P. Lighthouse Letter to Pl., ECF No. 99-20.* In

4

late July, LCD asked for additional information from Thomas' physician to determine whether Thomas' leave could be extended beyond August 2 due to disability. *Id.*

Thomas says that during this time period,  Ziraldo pressured him to return to work before August 2, 2010. *Pl.'s Resp. to Mot. Summ. J. 19, ECF No. 100; Pl.'s Second Am. Comp. 13, ECF No. 61.* Ziraldo denies he exerted pressure. *See Resp. to Mot. Summ. J. 25, ECF No. 100*; *See also Lighthouse Mot. Summ. J. 37, ECF No. 99.*

Thomas did not return to work on August 2, 2010. There is nothing in writing that leave was extended. *See Exh. C. Dep. Tr. of P. 397, 439, ECF No. 99-4.* On August 23, 2010, Thomas told  Ziraldo that he wanted to return to work but had concerns that needed to be resolved; he did not provide a date of return. *Exh. Q. Emails Dated August 23 and 24, 2010, ECF No. 99-21.*  Ziraldo told Thomas he would welcome him back but he needed clearance from a physician. *Id.* LCD requested and received a physician's medical examination report. *Id.* The report, shared with Thomas, detailed that he was able to return to work. *Id.*

On August 24, 2010, Thomas told  Ziraldo in writing that although he was "interested in returning to work, he had remaining concerns which had not been addressed" and initiated a meeting with LCD; it was scheduled for August 27, 2010. *Pl.'s Second Am. Comp. 14, ECF No. 61.*

Thomas alleges that at the meeting, Sterns and Ziraldo pressured him to return to work. *Pl.'s Second Am. Comp. 14, ECF No. 61.* Ziraldo disputes that he and Sterns exerted pressure. He says Thomas attended the meeting where he reiterated that he

5

wanted to return to work but had concerns about his son's child care issues. *Exh. A. Dep. Tr. of John Ziraldo, ECF No. 99-2*. Ziraldo says Thomas stated he would need additional time off to make child care arrangements. *Id.* Ziraldo says he agreed and advised Thomas that, by August 31, 2010, Thomas needed to return to work, or at a minimum, provide a specific date on which he would return to work. *September 15, 2010 Letter from Lighthouse to Pl., ECF No. 99-22*. Thomas failed to return to work or provide another date by August 31, 2010. *Id*.

Thomas called LCD and left messages "many times" between the August 27 meeting and September 7, 2010 and discussed the possibility of return, but provided LCD with no specific return date. *Exh. C. Dep. Tr. of Pl. 33, ECF No. 99-6*.

By September 7, 2010, LOO and LCD concluded that Thomas had abandoned his position and resigned under Policy 202. Thomas admits he had knowledge of "Policy 202" and signed a copy of the policy. *Exh. C. Dep. Tr. of P. 453, ECF No. 99-6*.

Thomas says he was never contacted on September 7, 2010 about his alleged resignation. *Pl.'s Second Am. Comp. 16, ECF No. 61*. Ziraldo testifies that he spoke with Thomas on the phone on September 7. *Exh. 7. Dep. Tr. of John Ziraldo 20, ECF No. 98-7*.

Ziraldo says that any of the business days between his August 27, 2010 meeting with Thomas and Thomas' termination on September 7, 2010 would qualify as three consecutive days without notification of Thomas' absence. *Exh. 7. Dep. Tr. of John Ziraldo 21-22, ECF No. 98-7*. Ziraldo posits that Thomas' absences from work on

6

September 4th, 5th, and 6th qualified as his official violations of "Lighthouse Employee Manual Policy 202" ("absences for three consecutive days, without notification, shall be considered a resignation.")

Thomas disputes that he was absent from work and contends he was on leave until September 13, 2010, per Dr. Rubenfaer's note provided to LCD on July 29, 2010. *Dep. Tr. of Pl. 20, ECF No. 99-6.* Ziraldo says Thomas' leave officially expired on August 2, 2010 and the note provided by Rubenfaer was one opinion that the organization took into consideration in deciding to decline or extend Thomas more leave. *Dep. Tr. of Ziraldo 16, ECF No. 98-8.* LCD was concerned after receiving an independent physician's report that Thomas was "fully able to work." *Id.*

Ziraldo testified that "[LOO and LCD were] within their rights to declare [Thomas'] position abandoned, to consider him no longer an employee, well before that date that I communicated to him..... So I exercised my discretion and elected not to declare the position abandoned [until September 7, 2010.] I was using my discretion.... Mr. Thomas's FMLA leave had expired and all of the other kinds of leave that the Agency could grant to its employees no longer applied to Mr. Thomas." *Exh. 7. Dep. Tr. of John Ziraldo 23, ECF No. 98-7.*

On September 15, 2010, Thomas was sent a letter citing "Policy 202," and was told that he abandoned his job and that he was terminated. *September 15, 2010 Letter from Lighthouse to Pl., ECF No. 99-22; Pl.'s Second Am. Comp. 16, ECF No. 61.*

7

### III.   STANDARD OF REVIEW

A motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Id.*

The court must view the evidence in the light most favorable to the non-moving party and it must also draw all reasonable inferences in the non-moving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The non-movant cannot rely upon bare assertions, conclusory allegations, or suspicions to substantiate his claims. *Columbia Natural Res., Inc. v. Tatum,* 58 F.3d 1101, 1109 (6th Cir. 1995). To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 577 (6th Cir. 2007). The existence of a mere scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment. *Anderson*, 477 U.S. at 251. A complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.* Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Id.*

8

at 250-51. The moving party does not, however, have to support its motion for summary judgment with evidence negating its opponent's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

IV.   **ANALYSIS**

   **A.  Racial Harassment**

Thomas sues LOO and LCD for violations of Title VII and Elliott-Larsen; he sues Ziraldo, individually, under both statutes. To establish a *prima facie* case for racial harassment claims under both Title VII and Elliott-Larsen, Thomas must establish the harassment was "sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment." *See, e.g., Reed v. Procter & Gamble Mfg. Co.*, 556 Fed. Appx. 421, 431–432 (6th Cir. 2014) (Title VII); *see also In re Rodriguez*, 487 F.3d 1001, 1010 (6th Cir. 2007) (Elliott-Larsen). Harassment claims are premised on a showing that the work environment is so tainted by harassment that it alters the terms and conditions of employment. *Harris v. Forklift Sys.*, Inc., 510 U.S. 17 (1993).

To succeed on a claim of a racially hostile work environment, Thomas must demonstrate that (1) he belonged to a protected group, (2) he was subject to unwelcome harassment, (3) the harassment was based on race, (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the Defendants knew or should have known about the harassment and failed to act. *Moore v. KUKA Welding Sys. & Robot Corp.*,

9

171 F.3d 1073, 1078–79 (6th Cir. 1999). The parties agree that the first two elements are satisfied; their dispute centers on the existence of questions of material fact on elements (3), (4), and (5).

The third element limits the scope of the claim: only harassment based on the plaintiff's race may be considered. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000). With respect to the fourth element, "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Harris*, 510 U.S. 17, 23 (1993). When analyzing that element, the fact-finder must consider harassment "by all perpetrators combined," rather than "divid[ing] and categoriz[ing] the reported incidents." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999).

Accordingly, the Court first determines what harassment, if any, was based on Thomas' race. The Court then asks if that harassment could create a question for the jury to determine if the behavior was sufficiently severe or pervasive to violate Title VII and Elliott-Larsen.

A plaintiff may prove that harassment was based on race by either (1) direct evidence of the use of race-specific and derogatory terms or (2) comparative evidence about how the alleged harasser treated members of both races in a mixed-race workplace. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80–81 (1998) (approving these methods in the analogous context of sexual harassment). Harassment is based on race when it would not have occurred but-for plaintiff's race; the harassing conduct need not be overtly racist to qualify. *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007).

10

In essence, Thomas alleges four types of racial harassment: (1) Sterns' "slave-driver" and "pray[ing] to God for guidance about working with Blacks" comments, (2) Sterns' physical acts ("whipping" motions), (3) Sterns' glares at Thomas, and (4) Ziraldo's alleged comment to "drop the civil rights charge." *Resp. to Mot. Summ. J. by Sterns and Ziraldo 8, ECF No. 103.* Defendants say (3) and (4) never occurred. *Dep. Tr. of Greg Sterns 10-13, ECF No. 98-9.*

The Court finds that a reasonable jury could not find that glares at Thomas were based on his race. Thomas offers no direct, indirect, or comparative evidence linking alleged glares to his race. Regarding Thomas' fourth allegation of racial harassment–he fails to provide any evidence beyond his own conclusory statements that Ziraldo's alleged comment "to drop the civil rights charge" was based on Thomas' race. *Columbia Natural Res., Inc.,* 58 F.3d at 1109. Accordingly, Thomas' third and fourth claims of harassment are insufficiently supported to create genuine issues of material fact for a jury.

A genuine issue of material fact exists for a jury to determine if Thomas' first and second claims of harassment were based on his race. Thomas' allegations about harassment are corroborated by Sterns in a deposition; but, Sterns disputes that his "slave-driver" comments and "whipping" motions had anything to do with Thomas' race. *Dep. Tr. of Greg Sterns 10, ECF No. 98-9.*

Next, the Court must consider whether a question of material fact exists in determining if Thomas' alleged race-based harassment was "sufficiently severe or

11

pervasive to alter the conditions of his employment and create an abusive working environment." *Harris*, at 21. The Court finds that Sterns' "slave driver" and "slave master" comments as well as his "whipping motions" are sufficiently severe to survive summary judgment.

Finally, Thomas alleges LOO and LCD had notice of the alleged harassment and failed to take appropriate remedial action to reprimand or punish Sterns. *Resp. to Mot. Summ. J. by Sterns and Ziraldo, ECF No. 103*. In a deposition, Ziraldo admits he did nothing with information he received regarding Sterns' questionable comments after Thomas' original complaint. *Dep. Tr. of John Ziraldo 12-13, ECF No. 98-8*. Thomas raises a genuine issue of material fact for a jury to determine if Ziraldo failed to take appropriate remedial action to end the harassment and if LOO and LCD are vicariously liable for the harassment.

The Court **DENIES** LOO's and LCD's motion for summary judgment (ECF No. 99) on Thomas' Title VII and Elliott-Larsen racial harassment claims.

The Court **GRANTS** Ziraldo's motion for summary judgment (ECF No. 98) with respect to Thomas' Elliott-Larsen harassment claim against him as an individual. Though Elliott-Larsen creates vicarious liability for employers and individual liability for employees and agents, Thomas only sues Ziraldo, and not Sterns, under Elliott-Larsen. *Elezovic v. Ford Motor Co.*, 472 Mich. 408, 431 (2005). It is undisputed that Ziraldo made no comments regarding Thomas' race. Thomas provides no evidence to substantiate a harassment claim against Ziraldo as an individual.

12

## B. Race Discrimination

Thomas sues LOO and LCD for discrimination under Title VII and Elliott-Larsen and Ziraldo individually under Elliott-Larsen. The Court analyzes these claims together.

Title VII forecloses an employer "from discharging any individual, or otherwise discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. § 2000e–2(a)(1). Likewise, Elliott-Larsen forbids "discriminating against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of ... race." M.C.L.A. 37.2202. The *prima facie* requirements for a discrimination case are the same under Michigan and federal law. *See Sniecinski v. Blue Cross & Blue Shield of Mich.,* 469 Mich. 124, 666 N.W.2d 186, 193 (2003).

Thomas may establish a claim of discrimination either by introducing direct evidence of discrimination or by presenting circumstantial evidence that would support an inference of discrimination. *Kline v. Tennessee Valley Auth.,* 128 F.3d 337, 348 (6th Cir. 1997). Where, as here, the claim is based on circumstantial evidence, the Court employs the burden-shifting framework set forth in *McDonnell Douglas. McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04.

Under *McDonnell Douglas,* Thomas carries the burden to establish a *prima facie* case. 411 U.S. at 802. To establish a *prima facie* case of discrimination under both Title VII and Elliott–Larsen, Thomas must show that (1) he is a member of a protected class; (2) he was qualified for the job; (3) he was subject to an adverse employment action;

13

and (4) for the same or similar conduct he was treated differently than similarly situated non-minority employees. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). If Thomas is able to establish a prima facie case of discrimination, the burden shifts to Defendants to produce a legitimate, non-discriminatory reason for the employment decision. *Id*. Once the Defendants meet this burden, the burden shifts back to Thomas to offer specific evidence establishing that the Defendants' stated reason is merely a pretext for discrimination. *Hollowell v. Michigan Consol. Gas Co.*, 50 F. Supp. 2d 695, 705 (6th Cir. 1999).

In the context of a discrimination claim, an adverse employment action is defined as a "materially adverse change in the terms or conditions" of employment. *Kocsis v. Multi–Care Mgmt. Inc.,* 97 F.3d 876, 885 (6th Cir. 1996). An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761 (1998).

Defendants do not contest that Thomas satisfies elements one and two of discrimination claims under Title VII and Elliott-Larsen. *See generally Mitchell*, 964 F.2d 577, 582 (6th Cir. 1992). And, the Court is persuaded that Thomas can satisfy the third element of the claim under the discrimination framework. *Id.* He was fired. *Lighthouse Mot. Summ. J. 16, ECF No. 99.* But, to the fatal detriment of his claim, Thomas fails to establish that a similarly situated non-minority employee failed to return from FMLA leave after numerous deadlines and then was allowed to continue working. Accordingly,

14

Thomas cannot establish the fourth element of a *prima facie* case of race discrimination under Title VII or Elliott-Larsen.

Since Thomas does not establish a *prima facie* case of discrimination, the Court declines to extend a *McDonnell Douglas* burden-shifting analysis. Even if it did, the Court is not convinced that Thomas offers any evidence that the reason for his termination proffered by Defendants (continued absence) was a pretext for discrimination.

LOO's and LCD's motion for summary judgment (ECF No. 99) with respect to Thomas' discrimination claims under Title VII and Elliott-Larsen and Ziraldo's motion for summary judgment on Thomas' discrimination claim under Elliott-Larsen are **GRANTED**.

### C. Race Discrimination Retaliation

Thomas alleges that after he filed complaints reporting alleged racial harassment, his work began to be highly scrutinized and the work environment changed into a "retaliatory hostile work environment" which culminated in his discharge. *Pl.'s Resp. to Lighthouse Mot. Summ. J. 18, ECF No. 100*.

Thomas' retaliation claims under Title VII and Elliott-Larsen carry the same evidentiary burden. *See McDonald v. Union Camp Corp.*, 898 F.3d 1155, 1162 (6th Cir. 1990); *see Graham v. Ford*, 237 Mich. App. 670 (1999). Title VII and Elliott-Larsen prohibit discrimination against an employee because that employee engaged in conduct protected by the acts. *See* 42 U.S.C. § 2000e–3(a); M.C.L.A. 37.2701.

To establish a *prima facie* case of retaliation, Thomas must show that: (1) he engaged in activity protected by Title VII [or Elliott-Larsen]; (2) the exercise of his civil rights was known to the Defendants; (3) the Defendants took an adverse employment action against him; and (4) there was a causal connection between the protected activity and the adverse employment action. *Harrison v. Metropolitan Gov't*, 80 F.3d 1107, 1118 (6th Cir. 1996). Retaliation claims "must be proved according to traditional principles of but-for causation," which "require proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* U.S. 133 (2013).

Under *McDonnell Douglas,* Thomas bears the initial burden to establish a *prima facie* case of retaliation. If he succeeds in making out the elements of a *prima facie* case, "the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. If the Defendants satisfy their burden of production, the burden shifts back to Thomas to demonstrate that Defendants' proffered reason was not the true reason for the employment decision." *Dixon v. Gonzales,* 481 F.3d 324, 333 (6th Cir. 2007). "Although the burden of production shifts between the parties, the plaintiff bears the burden of persuasion through the process." *Id.*

The parties do not dispute that Thomas established the first two elements of a retaliation claim. But, they do dispute whether LCD and Ziraldo took materially adverse actions against Thomas, and, if so, whether there was a causal connection between the protected activity and such action.

A retaliation claim can be established "either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." *Imwalle v. Reliance Medical Products, Inc.,* 515 F.3d 531, 538 (6th Cir. 2008). Thomas has chosen the latter. Thomas contends that after filing complaints about alleged racial harassment his work environment became hostile and he was later fired. *Pl.'s Resp. to Lighthouse Mot. Summ. J. 17, ECF No. 100.*

Thomas claims that after filing discrimination and harassment complaints, his work was scrutinized more harshly than his peers and the work environment at LCD became unbearable. *Id.* Thomas offers no corroboration of these claims beyond mere speculation and his own conclusory allegations. *Id.; Columbia Natural Res., Inc.,* 58 F.3d at 1109.

Thomas argues that his ultimate firing after filing complaints satisfies the requirements of a retaliation claim. But, when a plaintiff offers no additional evidence to support a finding that the protected activity and the adverse action were connected, temporal proximity is not enough to establish retaliation. *Cooper v. City of North Olmsted*, 795 F.2d 1265 (6th Cir. 1986). This is the situation the Court faces here.

Thomas fails to establish a connection between his complaints and LCD's and Ziraldo's alleged adverse employment actions. Because of this deficiency the Court declines to further analyze Thomas' claim under the *McDonnell Douglas* frame-work. Even if Thomas had established a *prima facie* case of retaliation, Defendants present evidence supporting a legitimate, non-discriminatory reason for termination that Thomas fails to rebut: he effectively resigned his position.

17

LOO's and LCD's motion for summary judgment (ECF No. 99) with respect to Thomas' retaliation claims under Title VII and Elliott-Larsen is **GRANTED**, as is Ziraldo's motion for summary judgment (ECF No. 98) with respect to Thomas' retaliation claim under Elliott-Larsen.

### D. FMLA

Thomas says LOO and LCD interfered with his exercise of FMLA rights and retaliated against him for exercising those rights by terminating him. LOO and LCD say: (1) Thomas' evidence is insufficient to support the allegation that the organization violated the FMLA; and (2) Thomas' FMLA claim is barred by the statute of limitations since LCD did not willfully violate the FMLA and Thomas' original complaint did not specifically articulate an FMLA claim.

### 1. Interference and Retaliation Claims

The FMLA entitles an eligible employee to take twelve weeks of leave per twelve month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. §2615(a)(1)(D). The FMLA also entitles an employee on leave the right to return to the same position and benefits he had just before he took leave. 29 U.S.C. §2614(a)(1)-(2).

The Sixth Circuit recognizes two distinct theories of wrongdoing under the FMLA. *Killian v. Yorozu Auto. Tenn., Inc.,* 454 F.3d 549, 555–56 (6th Cir. 2006). First, an "interference" theory arises from 29 U.S.C. §2615(a)(1) and 29 U.S.C. §2614(a)(1), which make it unlawful for employers to interfere with or deny an employee's exercise of

18

his FMLA rights and which require the employer to restore the employee to the same or an equivalent position upon the employee's return. *Arban v. West Publ'g Corp.,* 345 F.3d 390, 400–01 (6th Cir. 2003).  Second, a "retaliation" theory arises from 29 U.S.C. §2615(a)(2); it prohibits an employer from discharging or discriminating against an employee for "opposing any practice made unlawful by" the Act. *Id.*

Thomas asserts claims under both theories.

**FMLA Interference**

To state a *prima facie* claim for interference, Thomas must show: (1) he is an eligible employee; (2) Defendants are covered employers; (3) he was entitled to leave under the FMLA; (4) he gave Defendants notice of his intent to take leave; and (5) Defendants denied him FMLA benefits to which he was entitled. *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004); *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). The fifth element of an interference claim can also be that the employer has "somehow used the leave against him and in an unlawful manner, as provided in either the statute or regulations." *Bradley v. Mary Rutan Hosp.,* 322 F. Supp. 2d 926, 940 (S.D. Ohio 2004).

An employee can establish an FMLA discrimination claim through direct or indirect evidence. "Direct" evidence "proves the fact in question without reliance upon inference." *Caskey v. Colgate–Palmolive Co.,* 535 F.3d 585, 593 (7th Cir. 2008). Direct evidence usually involves some form of admission by the decision maker. *Id.* Where there is no direct evidence of discrimination, the *McDonnell Douglas* burden-shifting

approach applies. *Skrjanc v. Great Lakes Power Serv. Co.,* 272 F.3d 309, 315 (6th Cir. 2001); *See generally Grace v. USCAR,* 521 F.3d 655 (6th Cir. 2008) (holding that the Sixth Circuit effectively adopts the *McDonnell Douglas* burden-shifting test for FMLA interference claims).

If Thomas satisfies the *prima facie* elements for interference, the burden shifts to the employer to show a non-discriminatory reason for firing the employee. *Caskey,* 535 F.3d at 593. An employer's intent is not directly relevant to the interference inquiry. *Edgar v. JAC Prods.,* 443 F.3d 501, 508 (6th Cir. 2006) ("Interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct."). If the employer makes such a showing, the burden then shifts to the employee to establish that the purported reason is not legitimate and is in reality a pretext to mask discrimination. *Id.* at 508; *see also Skrjanc,* 272 F.3d 309, 315 (6th Cir. 2001).

Thomas says LCD employees and supervisors harassed him, pressured him, and encouraged him to return from FMLA leave early thereby interfering with his FMLA rights. *Pl.'s Resp. to Lighthouse Mot. Summ. J. 19, ECF No. 100*; *Am. Compl. 12, ECF No. 61.*

But, Thomas proffers no evidence beyond conclusory allegations and his own statements in a deposition to substantiate his interference claim. *Columbia Natural Res., Inc.,* 58 F.3d at 1109. Allegations must be more than mere conclusions, or they are not sufficient to state a civil rights claim. *Ana Leon T. v. Fed. Reserve Bank of*

*Chicago*, 823 F.2d 928, 930 (6th Cir. 1987). Thomas must provide either direct or inferential allegations respecting *all* material elements to sustain a recovery under some viable legal theory. *Bishop v. Lucent Technologies, Inc.*, 520 F.3d at 519 (emphasis added). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.* Thomas alleges FMLA interference where the record reflects the contrary. It appears LCD did not interfere with Thomas' FMLA rights, but rather, facilitated Thomas' exercise of them by providing him information about classifying time-off as FMLA leave and providing opportunities to return to work after he missed numerous previous return deadlines.

Thomas further fails to address or establish that Defendants' reason for his termination was a pretext to mask discrimination. *Skrjanc,* 272 F.3d 309, 315 (6th Cir. 2001). In denying the allegation of FMLA interference, Defendants provide the Court with documents detailing interactions between Thomas and LCD where Thomas was told that no ill will would arise because of his FMLA leave. LCD says Thomas was fired due to his consecutive absences. The FMLA permits an employer to enforce its "usual and customary notice and procedural requirements […] absent unusual circumstances." 29 C.F.R. § 825.302(d); *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 609 (6th Cir. 2013); *Cundiff v. Lenawee Stamping Corp.*, 597 F. App'x 299, 300 (6th Cir. 2015). An employer is justified in terminating [a plaintiff's] employment for his failure to follow an attendance policy. *Cundiff*, 597 F. App'x 299, 300 (6th Cir. 2015). Since Thomas does not rebut Defendants' proffer, he fails to satisfy his burden.

The Court finds no genuine issues of material fact exist regarding Thomas' FMLA interference claim.

**FMLA Retaliation**

Under the retaliation theory, the employer's motive is an integral part of the analysis. *Edgar v. JAC Prods.,* 443 F.3d 501, 507 (6th Cir. 2006). To state a retaliation claim, Thomas must show that: (1) he availed himself to a protected right under the FMLA; (2) he was adversely affected by an employment decision; and (3) there was a causal connection between his protected activity and Defendants' adverse employment actions. *Skrjanc,* 272 F.3d at 314. If Thomas satisfies these requirements, the burden shifts to LOO and LCD to give a legitimate, nondiscriminatory reason for discharging Thomas. *Id.* at 314. If LOO and LCD make the showing, the burden then shifts to Thomas to establish that the purported reason is not legitimate and is in reality a pretext to mask discrimination. *Id.* at 315; *Edgar*, 443 F.3d 501, 508 (6th Cir. 2006); *see generally McDonnell Douglas Corp.*, 411 U.S. 792, 793 (1973).

The Sixth Circuit holds that the FMLA prohibits employers from taking adverse employment actions against an employee based upon the employee's exercise of FMLA leave. *Bryant v. Dollar General Corp.,* No. 07–5006 (6th Cir. 2008). A plaintiff may recover under a retaliation theory only by showing that the action was taken because the employee exercised, or complained about the denial of, FMLA protected rights. *Edgar,* 443 F.3d at 512.

22

While temporal proximity is sufficient to meet the low burden required to establish a *prima facie* case of retaliation in violation of the FMLA, it is not sufficient to establish that an employer's legitimate, non-discriminatory reason for discharge is a pretextual mask for discrimination. *Skrjanc,* 272 F.3d at 317. Excessive absenteeism is a legitimate non-discriminatory reason to terminate an employee. *Norton v. LTCH*, 620 F. App'x 408 (6th Cir. 2015) (citing *Summerville v. ESCO Co.*, 52 F. Supp. 2d 804, 813 (W.D. Mich. 1999)).

Thomas says he was terminated from LCD because he exercised FMLA rights. While he articulates a temporal proximity argument, he proffers no evidence beyond his own bare assertions, conclusory allegations, and statements to substantiate his stance that LCD's reason for termination is not legitimate. *Columbia Natural Res., Inc.,* 58 F.3d at 1109. In denying the allegation of FMLA interference, LCD provides the Court with evidence establishing their many invitations for Thomas to return to work after his FMLA leave expired. *Exh. A. Dep. Tr. of John Ziraldo, ECF No. 99-2.* After Thomas failed to adhere to reasonable deadlines to return, LCD decided he had abandoned his position, applying "Lighthouse Policy 202." *Id.* Thomas fails to articulate how Defendants' proffered reason for termination is not legitimate and is pretextual. Accordingly, he fails to set forth a genuine issue of material fact that a jury could reasonably rely upon to find in favor of him.

### 2. Statute of Limitations

Even if substantively Thomas met the applicable burdens of proof on his FMLA claims, they are time barred. FMLA claims are governed by a statute of limitations which

provides either a two or three year limitations period: "The limitations period is normally two years, but is extended to three years if the FMLA violation was willful." 29 U.S.C. §2617(c).

The last event giving rise to Thomas' allegations took place on September 15, 2010. Thomas filed his first complaint *pro se* on December 14, 2012.

LOO and LCD say Thomas' original complaint filed in December 2012 does not articulate an FMLA claim. *Reply to Resp. re: Mot. Summ. filed by Lighthouse, ECF No. 106.* Due to this deficiency, LCD says the FMLA claims articulated and developed in amended complaints fall outside the two year statute of limitations. *Id*; 29 U.S.C. §2617(c).

Courts provide a "liberal" pleading standard to *pro se* litigants. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). Courts apply less stringent standards in determining whether *pro se* complaints state a claim for which relief can be granted. *Id.* Though Thomas' original *pro se* Complaint does not set forth a separate FMLA count, the Complaint mentions or references the FMLA 15 times. *See Compl., ECF No. 1.* Applying a less stringent standard to Thomas' original Complaint and exercising its discretion, the Court finds that Thomas' original Complaint sufficiently states interference and retaliation claims under the FMLA. The last event giving rise to Thomas' allegations took place on September 15, 2010. The general statute of limitations ran out on Thomas' FMLA claims two years after the last event giving rise to the action. Because Thomas' Complaint was filed after September 15, 2012, his claim is time-barred unless he can demonstrate willfulness.

Since Thomas fails to set forth genuine issues of material fact to support his interference and retaliation claims, the Court finds he cannot establish willfulness and his claims are time-barred.

The Court **GRANTS** LOO's and LCD's motion for summary judgment (ECF No. 99) with respect to Thomas' FMLA interference and retaliation claims.  Fed. R. Civ. P. 56(a).

### E. Disability Discrimination and Retaliation

### 1. ADA and PDCRA Discrimination

Thomas alleges that LOO and LCD violated the ADA and Michigan's PDCRA  by denying him reasonable accommodations and terminating him because of his disability. *Pl.'s Resp. to Lighthouse Mot. Summ. J. 18-24, ECF No. 100.*

The ADA and PDCRA are subject to the same analysis. *Smith v. Chrysler Corp.*, 155 F.3d 799, 804 (6th Cir. 1998).

LCD argues that Thomas fails to present a *prima facie* ADA and PDCRA claim because (1) LCD did not refuse to make reasonable accommodations; and (2) LCD did not terminate Thomas because of his disability. *Lighthouse Mot. Summ. J. 35, ECF No. 99.*

The ADA says that "no covered entity shall discriminate against a qualified individual on the basis of a disability in regard to job application procedures, the hiring,

25

advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

Similarly, the PDCRA provides that "an employer may not discharge or otherwise discriminate against an individual because of a disability that is unrelated to the individual's ability to perform the duties of a particular job or position." MCL 37.1101 *et seq*.

Both statutes require employers to make reasonable accommodations for disabled employees.

Claims brought under the ADA [and PDCRA] are evaluated under the *McDonnell Douglas* burden-shifting regime. *See Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178–85 (6th Cir. 1996) (abrogated on other grounds by *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012)).

To establish a *prima facie* case of discrimination Thomas must show (1) he is disabled; (2) he was otherwise qualified for the position, with or without reasonable accommodation; (3) he suffered an adverse action; (4) the employer knew or had reason to know of his disability; and (5) he was replaced or the job remained open. *Rosebrough v. Buckeye Valley High Sch.*, 690 F.3d 427, 431 (6th Cir. 2012); *Monette*, 90 F.3d at 1185. The parties only dispute element (3), that Thomas suffered an adverse action.

If Thomas can establish a *prima facie* case, the burden shifts to LCD to provide a "legitimate, nondiscriminatory reason" for the adverse action. *Monette*, 90 F.3d at 1185

(quoting *St. Mary's Honor Ctr. v. Hicks*, 590 U.S. 502, 506–07 (1993)). If such a reason is presented, Thomas must present evidence that would allow a jury to find that the Defendant's explanation is actually a pretext for unlawful discrimination. *Monette* at 1186. Thomas must show that he was terminated "on the basis of disability," 42 U.S.C. § 12112(a), meaning his disability was the but-for cause for his termination. *Lewis*, 681 F.3d at 321; *Yarberry v. Gregg Appliances, Inc.*, 625 F. App'x 729, 735-36 (6th Cir. 2015).

The ultimate burden to prove that an employer discriminated against an employee because of his disability remains at all times with the employee. *See Monette*, 90 F.3d at 1186–87. A plaintiff can prove discrimination through direct or indirect evidence. *Id.* The Sixth Circuit has repeatedly recognized "[t]he direct evidence and circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 453 (6th Cir. 2004) (quoting *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348–49 (6th Cir. 1997)).

Thomas' case cannot be categorized as either a "direct" or "indirect" evidence case. His disability discrimination claims fail not only because he does not prove but-for his disability he would not have been fired; more fundamentally, he does not provide the Court with evidence that he was denied reasonable accommodations.

Thomas says he was denied reasonable accommodations because LCD denied him unpaid leave, denied his request for a voice-to-text software program, and denied him a typing assistant. *See P. Resp. to Lighthouse's Mot. Summ. J.* 22, *ECF No. 100.*

27

Thomas' *prima facie* case for a claim of discrimination based on failure to accommodate requires him to show: (1) he is an individual with a handicap as defined in 29 C.F.R. § 1614.203(a)(1); (2) he is qualified for the position as discussed in 29 C.F.R. § 1614.203(a)(6); (3) the employer was aware of his disability; (4) an accommodation was needed; and (5) the employer failed to provide the necessary accommodation. *Gaines v. Runyon*, 107 F.3d 1171, 1175 (6th Cir.1997). Thomas bears the initial burden to suggest an accommodation and to show that the accommodation is objectively reasonable. *Monette*, 90 F.3d at 1183.

### Denial of Leave

Thomas' denial of leave allegation fails because he was given FMLA leave from May 7, 2010, through August 2, 2010, the maximum amount of leave granted by the statute, and unspecified employer leave from August 2, 2010, through August 31, 2010. Thomas was clearly given the leave which he claims he was denied.

The allegation also fails because Thomas effectively resigned his position. The Court is not convinced that Thomas suffered an adverse action under the ADA [and PDCRA] with regard to denial of leave because when an employee voluntarily resigns, "he cannot claim that he suffered an adverse employment decision under the ADA...." *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 447 (6th Cir. 1999) (discussing constructive versus effective resignation and finding that the plaintiff effectively resigned and therefore, had voluntarily ended his employment relationship with the defendant). When LOO and LCD enforced "Policy 202," they determined Thomas effectively resigned his position.

28

**Denial of Software**

Thomas' denial of software allegation fails because he does not provide any evidence that he responded to LCD's request for further information about his request for voice-to-text software. *Dep. Tr. of Judith Wheeler-Williams 4-5*, *ECF No. 99-10*.

**Denial of a Typing Assistant**

LCD stipulates that it denied Thomas a typing assistant by failing to brief the Court on the allegation. The factors used to determine whether an accommodation is reasonable include: "(1) the particular job involved, its purpose, and its essential functions; (2) the employee's limitations and how those limitations can be overcome; (3) the effectiveness an accommodation would have in enabling the individual to perform the job; and (4) the preference of the employee." *Keever v. City of Middletown*, 145 F.3d 809, 812 (6th Cir. 1998) (citing 29 C.F.R. app. § 1630.9(a)). If multiple reasonable accommodations exist, the employer is given discretion to choose between them. *Hankins v. Gap, Inc.,* 84 F.3d 797, 800–01 (6th Cir. 1996) ("As the Supreme Court has held in analogous circumstances, an employee cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided.") (citing *Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. 60, 68–69 (1986).

Thomas testified that LCD allowed him to handwrite his work. *Dep. Tr. of P. 22*, *ECF No. 99-5*. The Court finds that Thomas' requested accommodation was met with a reasonable alternative accommodation by his employer.

**Thomas Also Fails to Rebut LCD's Reason for Termination**

Thomas' disability discrimination claims also fail since he does not sufficiently rebut LCD's reason for termination. Thomas simply rejects the idea that he was fired because of continued absences. He offers no tangible evidence that could allow a reasonable jury to conclude he was denied reasonable accommodations, suffered an adverse action, or that LCD's reason for termination was pretextual.

The Court finds that no genuine issues of material fact regarding Thomas' ADA and PDCRA discrimination claims exist.

### 2. ADA and PDCRA Retaliation Claim

To establish a *prima facie* case of retaliation, Thomas must show that (1) he engaged in protected activity, (2) LCD took an adverse employment action against him, and (3) there was a causal connection between the protected activity and the adverse employment action. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000). The parties dispute elements (2) and (3). *Lighthouse Mot. Summ. J. 35, ECF No. 99.*

If Thomas establishes a *prima facie* ADA [or PDCRA] retaliation claim, the Defendants have the burden to "prove by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct." *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431 (6th Cir. 2000). If the Defendants do so, then Thomas must "show that the proffered reason was not its true reason but merely a pretext for retaliation" by demonstrating that Defendants' proffered reason: (1) has no basis in fact, (2) did not actually motivate the Defendants' action, or (3) was insufficient to motivate the Defendants' action. *Harris v. Metro. Gov't of Nashville & Davidson Cnty.*,

594 F.3d 476, 486 (6th Cir. 2010) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). "Although the burden of production shifts between the parties, the plaintiff bears the burden of persuasion throughout the process." *Dixon*, 481 F.3d at 333.

Thomas substantiates his retaliation claim with two sentences: "after Plaintiff reported harassment, he testified that the work environment changed. All of which created a retaliatory hostile work environment for Plaintiff. The retaliation culminated with Plaintiff's discharge." *Pl.'s Resp. to Mot. Summ. J. 24, ECF No. 100.*

With this small amount of proffered, conclusory evidence, the Court is not convinced LCD took an adverse employment action against Thomas; nor is the Court convinced that there is a causal connection between Thomas' protected activity and the alleged adverse action. When Thomas failed to return to work after missing numerous return deadlines, he effectively resigned. *Hammon*, 165 F.3d at 447; *September 15, 2010 Letter from Lighthouse to Pl., ECF No. 99-22.*

LCD also argues that Thomas cannot rebut its proffered reason for terminating him (failure to return to work). In response, Thomas merely reasserts his claim of disability retaliation. The Court finds that Thomas has provided insufficient evidence to permit a reasonable jury to find that LCD's reason for termination was pretextual.

No genuine issues of material fact exist regarding Thomas' ADA and PDCRA retaliation claims.

The Court **GRANTS** LOO's and LCD's motion for summary judgment (ECF No. 99) with respect to both Thomas' ADA and PDCRA discrimination and retaliation claims.

## F. Intentional Infliction of Emotional Distress

To succeed on his claim for intentional infliction of emotional distress, Thomas must prove: (1) "extreme" and "outrageous" conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Brown v. Cassens Transp. Co., 546 F.3d 347, 364 (6th Cir. 2008); Roberts v. Auto–Owners Ins. Co.*, 422 Mich. 594, 602 (1985). Liability has only been found:

> where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse resentment against the actor, and lead him to exclaim, "Outrageous!"

*Id.* at 602–03, 374 N.W.2d 905 (quoting Restatement (Second) of Torts § 46, comment d, p. 72–73)."It is generally the duty of the trial court to determine whether a defendant's alleged conduct may reasonably be regarded as so 'outrageous.' Where reasonable minds may differ, the question is for the jury.*" Garretson v. City of Madison Heights*, 407 F.3d 789, 799 (6th Cir. 2005).

Though a jury could find Sterns' alleged conduct to have been sufficiently severe to constitute racial harassment, and that Thomas was offended, Thomas has failed to provide the Court with adequate evidence to prove IIED elements (1), (2), or (3). The Court is not convinced Sterns' conduct was "extreme" or "outrageous" for the purposes

of IIED. Thomas fails to offer evidence beyond his own statements and allegations regarding Sterns' intent or recklessness. He also does not substantiate a link between Sterns' conduct and his own severe emotional distress. He merely asserts that Sterns' conduct and comments constitute IIED.

The Court finds there is no genuine issue of material fact with respect to IIED. The Court **GRANTS** Sterns' motion for summary judgment (ECF No. 98) on Thomas' IIED claim.

### V.   Conclusion

**These claims are dismissed:**

> **(1)** LOO's and LCD's motion for summary judgment (ECF No. 99) with respect to Thomas' discrimination and retaliation claims under Title VII, Elliott-Larsen, the ADA, the PDCRA, and the FMLA is GRANTED. Thomas' interference claim brought under the FMLA is also dismissed;

> **(2)** Ziraldo's motion for summary judgment (ECF No. 98) with respect to Thomas' harassment, discrimination and retaliation claims under Elliott-Larsen is GRANTED; and

> **(3)** Sterns' motion for summary judgment (ECF No. 98) on Thomas' claim of intentional infliction of emotional distress is GRANTED.

**Only this claim will proceed to trial:**

Thomas' racial harassment claim brought under Title VII and Elliott-Larsen against LOO and LCD (ECF No. 61).

**IT IS ORDERED.**

 /s/ Victoria A. Roberts     
Victoria A. Roberts
United States District Judge

Dated: 5/4/16